[No. B183934. Second Dist., Div. Four. June 20, 2006.]

MORGAN PHILLIPS, INC., Plaintiff and Appellant, v. JAMS/ENDISPUTE, L.L.C., et al., Defendants and Respondents.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part II of the Discussion.

## COUNSEL

Shapiro, Rodarte & Freedman, Cindy F. Forman, Thomas W. Foote and Daniel D. Rodarte for Plaintiff and Appellant.

Long & Levit, Joseph P. McMonigle, Beth A. Trittipo and Jessica Rudin MacGregor for Defendants and Respondents.

## OPINION

**WILLHITE, J.**—If an arbitrator withdraws from an arbitration proceeding for no stated ethical reason following evidence and argument, and offers to continue mediation efforts but refuses to render an arbitration award, does the doctrine of arbitral immunity protect the arbitrator from suit? We hold that

because such conduct defeats rather than serves the adjudicatory purpose of arbitration, arbitral immunity does not apply.

## BACKGROUND

Plaintiff Morgan Phillips, Inc., appeals from the judgment dismissing its claims against defendants John B. Bates, JAMS/Endispute, L.L.C., and JAMS, Inc.[1] The trial court entered the judgment after sustaining defendants' demurrer to Morgan Phillips's first amended complaint without leave to amend, on the ground that Morgan Phillips's claims are barred by the doctrine of arbitral immunity. We reverse.

Morgan Phillips's operative pleading is its first amended complaint. We set forth the facts in accordance with the standard governing demurrers: we assume the truth of all well-pleaded facts and accept as true all facts that may be implied or inferred from the facts alleged. (*Thaler v. Household Finance Corp.* (2000) 80 Cal.App.4th 1093, 1098 [95 Cal.Rptr.2d 779].)

Morgan Phillips, a retailer of specialty bedding products, contracted with two suppliers for mattresses and box springs made according to Morgan Phillips's specifications. In October 1999, after discovering that the suppliers were not manufacturing the products as specified, Morgan Phillips sued the suppliers. The parties retained JAMS and Bates to mediate the dispute. In September 2000, Bates assisted the parties in reaching a settlement. The "stipulation for settlement" provided that "[d]isputes regarding this matter will be submitted to [Bates] for binding resolution."

In 2002, Morgan Phillips again became dissatisfied with the suppliers' products, and invoked the dispute resolution clause of the stipulation for settlement. JAMS and Bates entered a contract with Morgan Phillips that was partly written, oral, and implied by law. Under the contract, JAMS and Bates agreed to conduct a "binding arbitration" pursuant to the dispute resolution term of the settlement agreement.

On or about September 11, 2002, Bates held "a four-hour hearing" at which Morgan Phillips produced an "actual demonstration of settlement merchandise cut open to reveal that . . . the bedding did not conform" to the requirements of the settlement agreement. After this evidence was presented, Bates continued the hearing to October 25, 2002, and "specifically informed the parties at that time that if the parties were unable to settle the dispute before the next scheduled arbitration session Bates would exercise his

---

[1] When necessary, we shall refer to JAMS/Endispute, L.L.C., and JAMS, Inc. collectively as "JAMS."

authority as arbitrator to render a binding arbitration decision. In addition, Bates specifically instructed counsel for [the suppliers] that at the next hearing counsel should be prepared to rebut the evidence proffered by Morgan Phillips and further, requested that Morgan Phillips prepare an updated damage study from its economic expert." Bates was "specifically and directly informed" that Morgan Phillips was in severe financial distress as a result of the breach, and that "there was a substantial risk that Morgan Phillips would be unable to continue in business if the dispute was not decided promptly."

When the arbitration reconvened on October 25, 2002, Morgan Phillips offered "evidence of laboratory testing" showing that the suppliers' merchandise breached the settlement agreement, and also submitted an updated damage study. Bates then gave the suppliers the opportunity to present evidence in their defense. When the suppliers finished, "all evidence had now been submitted to Bates for determination of the dispute. Bates did not request that either side present any additional evidence or to prepare any written statement of the evidence or legal argument. The arbitration hearing was now concluded and the case was now ready for Mr. Bates's arbitration decision."

Bates then "separated the parties into different rooms and [met] with each side separately in an apparent effort to settle the case without rendering an arbitration award. Over the course of the next few hours, and until the lunchtime break, Bates shuttled back and forth between the parties to discuss various alternative resolutions. However, as the lunchtime break was ending, Bates suddenly announced, with no lawful justification, that he decided to withdraw as the arbitrator. Bates thereafter failed and refused to issue a binding arbitration award."

Bates's conduct was part of an "unlawful[] . . . plan and scheme to coerce Morgan Phillips to settle the dispute in order to relieve Bates from his duty and responsibility to enter a binding arbitration award." Knowing of Morgan Phillips's dire financial situation, Bates tried to "coerce Morgan Phillips into an unfavorable settlement by unlawfully withdrawing as the designated arbitrator," and then informing Morgan Phillips "that he was willing to stay on and mediate the dispute, knowing full well that Morgan Phillips had . . . no other alternative if it hoped to continue in business." Bates acted with malice, oppression and specific intent to injure Morgan Phillips.

Further, JAMS advertises to the general public that it employs arbitrators who make decisions in a timely and cost-effective manner. JAMS fails to disclose, however, that its arbitrators "secretly retain the right" to abandon the arbitration "for no lawful reason" without rendering an award.

Based on these allegations, Morgan Phillips alleged two causes of action against both JAMS and Bates: the sixth, for breach of contract, and the seventh, for negligent breach of the duty to provide binding arbitration services. Morgan Phillips alleged one cause of action against JAMS alone: the eighth, a representative action for unfair competition and false advertising, in violation of Business and Professions Code sections 17200 and 17500.

JAMS and Bates demurred to the first amended complaint on several grounds, including that Morgan Phillips's claims were barred by the doctrine of arbitral immunity. Adopting that reasoning, the trial court sustained the demurrer to the sixth through eighth causes of action without leave to amend.

## DISCUSSION

### I. *Arbitral Immunity Does Not Bar Morgan Phillips's Claims*

As we have noted, Morgan Phillips alleged two causes of action against both JAMS and Bates: the sixth, for breach of contract, and the seventh, for negligent breach of the duty to provide binding arbitration services. The factual core of these claims is the allegation that Bates improperly withdrew from the arbitration proceeding, without cause, following evidence and argument in order to coerce a settlement, and refused to render an arbitration award. Morgan Phillips alleged one cause of action against JAMS alone: the eighth, for unfair competition and false advertising, in violation of Business and Professions Code sections 17200 and 17500. The basis of this claim is JAMS's allegedly deceptive public representations that its affiliated arbitrators will render binding arbitration decisions.

Morgan Phillips contends that arbitral immunity does not bar these claims. We agree.

Former Code of Civil Procedure section 1280.1 provided arbitrators with immunity coextensive to that of judicial officers "when acting in the capacity of arbitrator under any statute or contract." (Stats. 1985, ch. 709, § 1, p. 2341.) That statute expired in 1997. (*Stasz v. Schwab* (2004) 121 Cal.App.4th 420, 434 [17 Cal.Rptr.3d 116] (*Stasz*).) The expiration of the statute, however, did not affect the scope of California common law arbitral immunity, which protects arbitrators from civil liability for conduct in their quasi-judicial capacity, including the exhibition of bias or prejudice in the rendering of their decisions. (*Stasz, supra,* 121 Cal.App.4th at pp. 430–432.) The purpose of arbitral immunity is to encourage fair and independent decisionmaking by immunizing arbitrators from lawsuits arising from conduct in their decisionmaking role. (*Thiele v. RML Realty Partners* (1993) 14 Cal.App.4th 1526, 1531 [18 Cal.Rptr.2d 416] (*Thiele*); see *Stasz, supra,* 121

Cal.App.4th at pp. 431–432; see also *Austern v. Chicago Bd. Options Exchange, Inc.* (2d Cir. 1990) 898 F.2d 882, 885–886.) Thus, generally speaking, arbitral immunity "shields all functions which are 'integrally related to the arbitral process.' [Citations.]" (*Thiele, supra,* 14 Cal.App.4th at p. 1530.)

California common law has recognized a narrow exception to arbitral immunity: the immunity does not apply to the arbitrator's breach of contract by failing to make any decision at all. (*Baar v. Tigerman* (1983) 140 Cal.App.3d 979, 983–985 [189 Cal.Rptr. 834, 211 Cal.Rptr. 426] (*Baar*); see Knight et al., Cal. Practice Guide: Alternative Dispute Resolution (The Rutter Group 2005) ¶ 5:41, p. 5-28.) The exception is supported by a commonsense rationale. The failure to render an arbitration award is not integral to the arbitration process; it is, rather, a breakdown of that process. Moreover, for nonfeasance by a judge, litigants can petition for an extraordinary writ to compel action. For nonfeasance by an arbitrator who has conducted the arbitration but fails to render an award, the parties' only remedy is a civil suit for specific performance or damages. As stated by one court, by failing to make a timely decision the arbitrator "loses his claim to immunity because he loses his resemblance to a judge. He has simply defaulted on a contractual duty to both parties." (*E.C. Ernst, Inc. v. Manhattan Const. Co. of Texas* (5th Cir. 1977) 551 F.2d 1026, 1033, opn. mod. 559 F.2d 268.)

■ The scope of the exception is best explained by the decision in *Baar*, which created it. In *Baar,* the plaintiffs had engaged the American Arbitration Association (AAA) and the arbitrator to conduct an arbitration proceeding. Over a four-year period, the arbitrator held 43 days of hearings and 10 days of argument. After expiration of an extended deadline, and seven months after the matter had been submitted for decision, the arbitrator still had not rendered an award. The plaintiffs filed objections to the arbitrator making an award, thereby divesting the arbitrator of jurisdiction. They then sued the arbitrator and the AAA for breach of contract, negligence, and other claims. (*Baar, supra,* 140 Cal.App.3d at pp. 981–982.) On these facts, the Court of Appeal held that the arbitrator was not entitled to arbitral immunity. The court observed that "[c]ases in which courts have clothed arbitrators with immunity have involved disgruntled litigants who sought to hold an arbitrator liable for *alleged misconduct in arriving at a decision.* [Citations.] By contrast, the present case involves [the arbitrator's] *failure to make an award* without any allegation of misconduct similar to that charged in the above cases." (*Id.* at p. 983, original italics.) Further, the court noted that arbitration is primarily governed by contract, and the contract at issue set a deadline for the award: "A judge has discretion in terms of when a decision is made, but an arbitrator loses jurisdiction if a timely award is not forthcoming. [Citations.] While we must protect an arbitrator acting in a *quasi-judicial capacity,* we

must also uphold the contractual obligations of an arbitrator to the parties involved." (*Id.* at p. 985, original italics.)

In the instant case, taking the relevant allegations as a whole,[2] Morgan Phillips alleges that after completion of the evidence and argument at the arbitration proceeding, Bates conducted failed settlement talks. He then sought to coerce an unfavorable settlement from Morgan Phillips, and avoid having to issue an award, by withdrawing as arbitrator without justification. He offered to continue mediation efforts, but he refused to issue an award. There is no indication that Bates gave any reason for his withdrawal.

Although we are mindful of the need to protect arbitrators from vexatious litigation arising from conduct in their quasi-judicial function, Morgan Phillips's allegations portray conduct foreign to that function—conduct that is the antithesis of the adjudicatory purpose of arbitration. Because arbitral immunity is designed to foster " 'principled and fearless decision-making' " (*Thiele, supra,* 14 Cal.App.4th at p. 1531, quoting *Corey v. New York Stock Exchange* (6th Cir. 1982) 691 F.2d 1205, 1209), it cannot be used to immunize the unprincipled abandonment of the arbitration and refusal to make a decision. Accepting Morgan Phillips's allegations as true, Bates's conduct is not "sufficiently associated with the adjudicative phase of the arbitration to justify immunity." (*Thiele, supra,* 14 Cal.App.4th at p. 1530; see *Baar, supra,* 140 Cal.App.3d at p. 985.)

Relying on *Stasz,* JAMS and Bates argue that arbitral immunity protects all actions taken in an arbitrator's quasi-judicial capacity, except "complete nonperformance." In dicta, *Stasz* referred to one commentator's limited interpretation of *Baar,* as providing an exception to arbitral immunity only when the arbitrator " 'completely fails to do his job,' " and to another's suggestion that under *Baar* arbitrators should be immune for " '[a]nything short of complete nonperformance.' " (*Stasz, supra,* 121 Cal.App.4th at p. 437.)

---

[2] JAMS and Bates argue that in determining the sufficiency of Morgan Phillips's pleading, we should disregard certain allegations of the first amended complaint that contradict the initial complaint. We decline. A trial court has discretion to disregard such inconsistent allegations. (See *Owens v. Kings Supermarket* (1988) 198 Cal.App.3d 379, 384 [243 Cal.Rptr. 627].) In the instant case, however, there is no indication that the trial court did so. Hence, we infer that the court considered all the allegations of the first amended complaint in its ruling, and we find no abuse of discretion in its doing so. The initial complaint alleged that Bates "interrupted the arbitration proceeding" to conduct settlement talks (which failed) and then withdrew, refusing to issue an award. The first amended complaint alleges that the settlement talks, and Bates's withdrawal, occurred after all evidence and argument had been presented, and "[t]he arbitration hearing was now concluded." The trial court could reasonably conclude that the first amended complaint presented a fuller explanation of the operative circumstances, not one fatally inconsistent with the initial complaint.

Precisely what these commentators mean by "complete nonperformance" is not clear. If they mean that conducting some or all of the arbitration proceeding creates immunity for the unjustified failure to render an award, we disagree. In the instant case, Morgan Phillips alleges that Bates entered a contract to conduct a binding arbitration. Bates's alleged unjustified abandonment of the arbitration and refusal to render an award while offering to continue mediation (if true) is effectively a "complete nonperformance" of the ultimate object of the arbitration he contracted to conduct.

■ JAMS and Bates argue that an arbitrator's withdrawal from an arbitration proceeding before rendering an award is a quasi-judicial act entitled to immunity. We emphasize that we are at the pleading stage of the litigation, before a full evidentiary picture has been developed. Certainly, a decision to withdraw because of substantial doubt of the ability to be fair and impartial, or because of a conflict of interest, is entitled to immunity. (See Code Civ. Proc., § 1281.9, subd. (a) and § 170.1, subd. (a)(6)(B); Cal. Rules of Court, appen., div. VI, Ethics Standards for Neutral Arbitrators in Contractual Arbitration, std. 6.) An arbitrator's decision to withdraw based on ethical standards is integral to the arbitral function; the act itself, as well as the consequent failure to render an arbitration award, is covered by arbitral immunity. Further, we do not mean to suggest that parties to an arbitration proceeding are entitled to litigate the validity of an arbitrator's stated ethical grounds for recusal in support of a later civil suit against the arbitrator or the sponsoring organization for breach of the duty to conduct a binding arbitration.

■ But in the instant case, we must accept as true the allegations of Morgan Phillips's first amended complaint. The allegations of the complaint do not reveal whether Bates gave any reason for his withdrawal. Morgan Phillips alleges that Bates withdrew without justification in order to coerce a settlement, while at the same time offering to continue mediation efforts and refusing to render an award. If these facts are true, and in the absence of any other showing, Bates's withdrawal (and the resultant refusal to render an award) is not immunized as a decision necessitated by ethical strictures. Rather, it is conduct inconsistent with those strictures and with his quasi-judicial role as an arbitrator. It amounts to a breach of his contractual duty to conduct a binding arbitration.

JAMS and Bates contend that the privileges related to mediation confidentiality created by Evidence Code sections 703.5, 1119, and 1121 prevent them from presenting a defense, and therefore require barring Morgan Phillips's claims. At the demurrer stage, however, we evaluate only whether the allegations of the complaint state a valid cause of action. That evidentiary privileges might affect presentation of defense evidence at trial is not a basis

for sustaining a demurrer. We cannot speculate on what evidence JAMS and Bates will seek to introduce, and what effect, if any, the cited privileges will have on that evidence.

Assuming the allegations of the first amended complaint to be true, we conclude that the trial court erred in ruling that the doctrine of arbitral immunity bars Morgan Phillips's claims against JAMS and Bates.

II. *The Remaining Grounds of Demurrer Fail*[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment is reversed. Morgan Phillips shall recover its costs on appeal.

Epstein, P. J., and Hastings, J.,[†] concurred.

---

[*]See footnote, *ante*, page 795.

[†]Retired Associate Justice of the Court of Appeal, Second Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.