Filed 7/29/13  Second Skin Film v. Independent Film & Television Alliance CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| SECOND SKIN FILM, LLC,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>INDEPENDENT FILM & TELEVISION ALLIANCE et al.,<br><br>    Defendants and Respondents. | B242451<br><br>(Los Angeles County<br>Super. Ct. No. SC115391) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Norman P. Tarle, Judge.  Affirmed.

Law Offices of Barry K. Rothman and Fredric R. Brandfon for Plaintiff and Appellant.

Pillsbury Winthrop Shaw Pittman, Christine A. Scheuneman, Gevik M. Baghdassarian and Nathaniel R. Smith for Defendants and Respondents.

_____

Plaintiff appeals from a judgment entered after the trial court sustained defendants' demurrer to plaintiff's complaint without leave to amend. We affirm.

## BACKGROUND[1]

On December 28, 2011, plaintiff Second Skin Film, LLC (plaintiff) filed this action against defendants Independent Film & Television Alliance, Richonda Starkey, Kim Tommaselli and Susan Cleary (collectively, defendants). Starkey, Tommaselli and Cleary are employees and/or officers of defendant Independent Film & Television Alliance (IFTA). IFTA administered arbitration proceedings between plaintiff and third party Liberation Entertainment, Inc. (Liberation) as discussed in more detail below.

As alleged in plaintiff's complaint, in December 2008, plaintiff and Liberation entered into an agreement under which plaintiff granted Liberation the right to distribute the film Second Skin (the film) and Liberation agreed to compensate plaintiff for the distribution rights. The agreement included an arbitration clause requiring plaintiff and Liberation to arbitrate before IFTA, in accordance with IFTA's Rules, any disputes arising under the agreement. The agreement is attached to the complaint as exhibit 1.

Plaintiff alleges, after it delivered the film to Liberation for distribution in July 2009, Liberation did not pay all compensation as required under the agreement. In January 2010, Liberation assigned its assets to CMBG Advisors, Inc. (CMBG) "in a General Assignment for the Benefit of Creditors." CBMB informed plaintiff it planned to sell the film or sublicense the distribution rights to the film for the benefit of creditors. Plaintiff did not believe CMBG had the right to do either of these things under the agreement.

---

[1] In accordance with the standard of review set forth below, the background facts are taken from the complaint and matters subject to judicial notice. Facts are attributable to the allegations of the complaint unless another document is specified (e.g., exhibit attached to the complaint, exhibit attached to defendants' request for judicial notice).

On or about June 3, 2010, plaintiff filed an arbitration claim with IFTA against Liberation and CMBG. Plaintiff paid a $5,000 arbitration fee to IFTA. In late June 2010, plaintiff dismissed the arbitration claim against CMBG after CMBG's counsel argued the claim against it was not subject to arbitration. In July 2010, plaintiff filed an action against CMBG in Los Angeles Superior Court (case number SC108757).

On July 7, 2010, IFTA sent a letter to plaintiff acknowledging the filing of the arbitration claim against Liberation and enclosing a copy of IFTA's Rules, dated June 1, 2009. In the letter, IFTA pointed out Rule 15 requires the parties to waive all present and future claims against IFTA and its officers and employees relating to the arbitration. This letter (without the enclosure) is attached to the complaint as exhibit 3.[2] Plaintiff alleges, "On July 7, 2010, IFTA notified Liberation of the arbitration and that it had 21 days from receipt of the Notice to respond."

As set forth in the complaint, IFTA appointed an arbitrator in late July 2010. On August 23, 2010, the arbitrator notified Liberation it had not timely responded to plaintiff's arbitration claim and the arbitrator "would 'declare a default' against Liberation" if it did not respond by August 30, 2010. Liberation did not respond. The arbitrator asked plaintiff to request a default. Plaintiff did so.

The arbitrator did not take Liberation's default. According to the allegations of the complaint, without notice to plaintiff, the arbitrator called CMBG's counsel on September 9 and 13, 2010, asking CMBG to respond to the arbitration claim. As set forth above, plaintiff already had dismissed CMBG from the arbitration. On September 13, 2010, CMBG's counsel responded to the arbitration claim, reiterating CMBG's position that plaintiff's claim against it was not subject to arbitration.

Plaintiff alleges, "On September 16, [the arbitrator] wrote a long email to Plaintiff admitting he had had inappropriate *ex parte* communications with CMBG's attorney and

---

[2] We identify herein only those exhibits to the complaint which are pertinent to our discussion of the issues on appeal.

3

offering to withdraw as arbitrator." On September 20, 2010, plaintiff requested the arbitrator's disqualification. The arbitrator withdrew.

On October 6, 2010, IFTA appointed a second arbitrator. "IFTA sent a few, but not all, pertinent documents concerning the arbitration to [the second arbitrator] and informed him that Liberation had been required to respond to the [arbitration] Petition by August 2, 2010." The second arbitrator asked Liberation to respond to plaintiff's arbitration claim. Plaintiff alleges, "On October 8, 2010, [plaintiff] immediately responded to [the second arbitrator] and demanded that Liberation, which had had numerous opportunities over a three month period to respond to the Petition, be held in default." The same day, the second arbitrator withdrew.

On or about October 11, 2010, IFTA appointed a third arbitrator, "giving him the same limited information it had provided" the second arbitrator. Plaintiff alleges this third arbitrator "scheduled a conference call for October 21, 2010 and took no notice of the fact that Liberation had been in default for two and one half months. Nor did he take notice of the fact that Liberation, having been given every opportunity to respond to the arbitration petition, had apparently decided not to respond." Plaintiff "demanded" the third arbitrator take Liberation's default.

On October 21, 2010, IFTA notified plaintiff the third arbitrator had withdrawn and IFTA would not appoint a fourth arbitrator. IFTA withdrew as the arbitral agent. IFTA's October 21, 2010 letter to plaintiff's counsel states, in pertinent part: "IFTA [is] unable to continue to administer the arbitration (including soliciting arbitrators) in a neutral manner as a result of your continuing threats of litigation and hostility against IFTA, the IFTA Arbitral Agent and each IFTA Arbitrator assigned to the arbitration."[3] Plaintiff requested return of the arbitration fees it had paid. IFTA refused this request.

_____

[3] This October 21, 2010 letter is contained in appellant's appendix on appeal, attached to plaintiff's ex parte application for an order requiring IFTA to stay the second arbitration, filed in the trial court in this action on or about January 19, 2012. We discuss plaintiff's ex parte application below.

Defendants requested the trial court take judicial notice of this October 21, 2010 letter in their unopposed request for judicial notice in support of the demurrer. The trial court

4

Plaintiff named Liberation as a defendant in its action against CMBG pending in Los Angeles Superior Court (case number SC108757). Liberation filed a motion to compel arbitration. IFTA notified plaintiff and Liberation that IFTA would comply with a court order compelling arbitration. In November 2011, the Los Angeles Superior Court granted Liberation's motion to compel arbitration. On December 12, 2011, IFTA notified plaintiff that Liberation had filed an arbitration claim and plaintiff had 21 days to respond. IFTA also sent plaintiff another copy of its Rules, dated June 1, 2009, and again made reference to Rule 15 regarding waiver of all claims against IFTA, its officers and employees relating to the arbitration. IFTA's December 12, 2011 letter is attached to the complaint as exhibit 6.[4]

As set forth above, plaintiff filed the present action against defendants (IFTA and three of its employees and/or officers) on December 28, 2011. Plaintiff asserted causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, intentional interference with contract, negligence, conversion, disgorgement and fraud, based on allegations, including but not limited to, that IFTA appointed

did not rule on defendants' request for judicial notice. We sent a letter to the parties informing them we intended to take judicial notice of the October 21, 2010 letter and affording the parties an opportunity to address the issue in a letter brief. IFTA submitted a letter brief stating reasons that judicial notice of the October 21, 2010 letter is proper. Plaintiff did not submit a letter brief. On the court's own motion, we take judicial notice of IFTA's October 21, 2010 letter to plaintiff's counsel.

[4] On March 21, 2013, plaintiff filed a request for judicial notice asking this court to take judicial notice of a letter brief filed in the second IFTA arbitration proceeding. As plaintiff acknowledges, the contents of the letter brief are not relevant to this appeal. Plaintiff references the case title on the letter brief which shows IFTA gave the second arbitration a different case number than the first arbitration. In the request for judicial notice, plaintiff argues: "This fac[t] to be judicially noticed is relevant to this appeal because it demonstrates that IFTA did not resume a previous arbitration but instead star[t]ed a new arbitration and reversed the parties so that Liberation became the Petitioner in the new arbitration." Plaintiff's March 21, 2013 request for judicial notice is denied because the material is cumulative. Other documents in appellant's appendix demonstrate IFTA gave the second arbitration a new case number and Liberation was listed as the petitioning party. For example, the December 12, 2011 letter attached to plaintiff's complaint as exhibit 6 (discussed above) demonstrates these facts.

5

incompetent arbitrators, failed to administer the first arbitration, refused to return the arbitration fees plaintiff paid, and notified plaintiff it would administer the second arbitration only if plaintiff waived all claims against defendants.

On or about January 19, 2012, plaintiff filed an ex parte application seeking an order requiring the trial court in this action to stay the second arbitration which was ordered after the trial court in case number SC108757 granted Liberation's motion to compel arbitration. Plaintiff argued it would "be irreparably harmed if forced to go forward with an arbitration before the IFTA while Plaintiff has an open and active lawsuit against IFTA, arising out of a prior incomplete arbitration with IFTA [the first arbitration] concerning the same parties and issues that are before the IFTA" in the second arbitration. The trial court denied plaintiff's ex parte application.

On February 8, 2012, defendants demurred to the complaint in the present action on grounds (1) "the causes of action set forth in Plaintiff's Complaint are barred by the common law of arbitral immunity;" (2) "the Complaint fails to state facts sufficient to constitute a cause of action for intentional interference with contract;" (3) "the Complaint seeks the refund of an arbitration fee which is non-refundable according to the applicable arbitration rules;" and (4) "the Plaintiff has waived all claims made in the Complaint."

In support of the demurrer, defendants filed a request for judicial notice of several documents. Plaintiff did not oppose the request for judicial notice. Defendants asked the trial court to take judicial notice of IFTA's Rules, dated June 1, 2009. As noted above, these Rules are referenced in exhibits 3 and 5 to plaintiff's complaint (letters from IFTA to plaintiff). Although these letters attached to the complaint indicate IFTA enclosed the Rules with the letters, plaintiff did not attach the Rules to the complaint.

In connection with the demurrer, defendants pointed out three of IFTA's Rules. Rule 1.3 provides, in pertinent part, "Filing fees are non-refundable." Rule 11 governing default provides: "If one of the parties fails to respond to any demand by the Arbitrator for documents or other materials, or fails to appear for a hearing or in any manner fails to conform to the provisions of these Rules of Arbitration or any order of the Arbitrator, the Arbitrator may declare that party to be in default and make appropriate orders or interim

6

awards to require compliance or may make a final award based upon the evidence that is before the Arbitrator at such time or may be subsequently received by the Arbitrator under formal proceedings authorized under these Rules except that no final award shall be issued in any arbitration under these Rules without the prevailing party establishing a prima facie case to the satisfaction of the Arbitrator." Rule 15, discussed above, provides the parties waive all present and future claims against the arbitral agent and its employees relating to the arbitration.

Plaintiff filed an opposition to the demurrer. Plaintiff argued arbitral immunity does not apply where an arbitrator fails to arbitrate a dispute in front of it. Plaintiff further argued defendants cannot enforce IFTA's Rules, including Rule 15 regarding waiver of claims, because defendants breached the agreement to arbitrate the dispute between plaintiff and Liberation, and the Rules are part of the agreement defendants breached. Plaintiff also disputed defendants' argument that plaintiff did not state a cause of action for intentional interference with its agreement with Liberation by refusing to conduct the arbitration. Defendants filed a reply brief.

On April 23, 2012, the trial court heard oral argument on the demurrer and thereafter adopted its tentative ruling sustaining the demurrer without leave to amend. The court concluded plaintiff's causes of action are barred by arbitral immunity. On May 10, 2012, the court entered judgment in favor of defendants and dismissed the complaint.

On February 20, 2013, defendants filed a request for judicial notice asking this court to take judicial notice of documents filed in the trial court in case number SC108757. On July 10, 2012, plaintiff filed an ex parte application seeking an order staying the second arbitration between plaintiff and Liberation, which had already "completed its first phase" in which "Plaintiff ha[d] lost and Liberation Entertainment ha[d] won." On August 31, 2012, plaintiff filed a request for dismissal of its Complaint as to Liberation, CMGB and others. On September 4, 2012, plaintiff filed a Notice of Partial Settlement, stating it had settled the causes of action asserted in its Complaint as to Liberation, CMBG and others. In their Request For Judicial Notice, defendants argue

7

these three documents "are relevant to this appeal because they establish (1) that [defendants] administered an arbitration between [plaintiff] and Liberation, and (2) that [plaintiff] settled and dismissed its claims against Liberation." We grant defendants' unopposed request for judicial notice.

## DISCUSSION

Plaintiff contends the trial court erred in sustaining defendants' demurrer to plaintiff's complaint without leave to amend on the ground arbitral immunity bars plaintiff's causes of action against defendants.

In reviewing the trial court's order sustaining the demurrer, "we examine the complaint de novo." (*McCall v. PacifiCare of California, Inc.* (2001) 25 Cal.4th 412, 415.) "We give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] Further, we treat the demurrer as admitting all material facts properly pleaded, but do not assume the truth of contentions, deductions or conclusions of law. [Citations.]" (*City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 865.) "'We also consider matters which may be judicially noticed.'" (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) "When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse. [Citation.]" (*City of Dinuba v. County of Tulare*, *supra*, 41 Cal.4th at p. 865.)

"'Arbitral immunity shields all functions which are "integrally related to the arbitral process." . . . [A]rbitrators [and the organizations that sponsor arbitrations] . . . are exempt from civil liability for failure to exercise care or skill in the performance of their arbitral functions.' [Citation.]" (*Stasz v. Schwab* (2004) 121 Cal.App.4th 420, 431-432, 433 (*Stasz*).) "The purpose of arbitral immunity is to encourage fair and independent decisionmaking by immunizing arbitrators from lawsuits arising from conduct in their decisionmaking role." (*Morgan Phillips, Inc. v. JAMS/Endispute, L.L.C.* (2006) 140 Cal.App.4th 795, 800 (*Morgan Phillips*).) "'"[T]he independence necessary

8

for principled and fearless decision-making" is best achieved by shielding persons involved in the arbitral process from ". . . intimidation caused by the fear of a lawsuit" arising out of the exercise of arbitral functions. . . .'" (*Stasz*, *supra*, 121 Cal.App.4th at p. 431.)

"California common law has recognized a narrow exception to arbitral immunity: the immunity does not apply to the arbitrator's breach of contract by failing to make any decision at all." (*Morgan Phillips*, *supra,* 140 Cal.App.4th at p. 801.) "'[A]rbitrators may be held liable for complete nonperformance of their contract with the parties. Anything short of complete nonperformance would be protected by arbitral immunity.' [Citations.]" (*Stasz*, *supra*, 121 Cal.App.4th at p. 437.) Arbitral immunity does not apply where the "unjustified abandonment of the arbitration and refusal to render an award . . . is effectively a 'complete nonperformance' of the ultimate object of the arbitration" contract. (*Morgan Phillips*, *supra*, 140 Cal.App.4th at p. 803; see *id*., p. 802.)

To illustrate the reasons arbitral immunity applies here, we discuss the facts of cases in which courts have applied the narrow exception to arbitral immunity. In *Baar v. Tigerman* (1983) 140 Cal.App.3d 979, 981-982 (*Baar*), the plaintiffs alleged an arbitrator held 43 days of evidentiary hearings and 10 days of closing argument over a four-year period, but failed to render an award and "lost the authority vested in him by the AAA [American Arbitration Association] contract and the statutory law to make an award." The Court of Appeal concluded arbitral immunity did not bar a breach of contract action brought by the parties to the arbitration against the arbitrator and AAA based on the failure to make an award. (*Id*. at pp. 982-985.) Therefore, the appellate court reversed orders of dismissal sustaining defendants' demurrers without leave to amend. (*Id*. at pp. 981, 987.)[5]

---

[5] In 1985, Code of Civil Procedure "[s]ection 1280.1 was enacted to overrule the decision in *Baar*, *supra* . . . ." (*Stasz*, *supra*, 121 Cal.App.4th at p. 434.) Section 1280.1 provided: "An arbitrator has the immunity of a judicial officer from civil liability when acting in the capacity of arbitrator under any statute or contract." (Stats. 1985, ch. 709, § 1, p. 2341.) Section 1280.1 was repealed by operation of law on January 1, 1997, "leaving arbitral immunity to be determined under California common law." (*Stasz*,

In *Morgan Phillips*, *supra*, 140 Cal.App.4th at page 799, the plaintiff alleged, at the conclusion of the presentation of evidence in an arbitration, the arbitrator attempted to settle the case without rendering an award and then "'suddenly announced, with no lawful justification, that he decided to withdraw as the arbitrator'" and "'thereafter failed and refused to issue a binding arbitration award.'" The plaintiff's breach of contract action against the arbitrator and the organization that sponsored the arbitration was based on the allegation the arbitrator "improperly withdrew from the arbitration proceeding, without cause, following evidence and argument in order to coerce a settlement, and refused to render an arbitration award." (*Id*. at p. 800.) The Court of Appeal concluded the allegations of the complaint demonstrated the arbitrator's "'complete nonperformance' of the ultimate object of the arbitration he contracted to conduct." (*Id*. at p. 803.) Accordingly, arbitral immunity did not bar the plaintiff's action. The appellate court reversed the judgment entered after the trial court sustained defendants' demurrer without leave to amend. (*Id*. at p. 804.)

The *Morgan Phillips* court explained "arbitral immunity 'shields all functions which are "integrally related to the arbitral process." [Citations.]' [Citation.]" (140 Cal.App.4th at p. 801.) The court noted, "An arbitrator's decision to withdraw based on ethical standards is integral to the arbitral function; the act itself, as well as the consequent failure to render an arbitration award, is covered by arbitral immunity." (*Id*. at p. 803.)

In this case, plaintiff argues the narrow exception to arbitral immunity applies because defendants "failed utterly to arbitrate the dispute in front of them." Plaintiff asserts, "in the face of numerous demands by [plaintiff] that default be taken, [defendants] simply withdrew as the arbitral agent." For the reasons explained below, we conclude arbitral immunity bars this action.

_____

*supra*, 121 Cal.App.4th at p. 436.) Appellate courts continue to cite *Baar* as an example of the narrow exception to arbitral immunity recognized in California common law. (*Morgan Phillips*, *supra*, 140 Cal.App.4th at p. 801; *Greenspan v. LADT, LLC* (2010) 185 Cal.App.4th 1413, 1458; *Stasz, supra*, 121 Cal.App.4th at pp. 434-437.)

There can be no doubt defendants are immune from liability for their refusal to take Liberation's default. An arbitrator's decision to take a default or not to take a default is certainly a function integrally related to the arbitral process within the meaning of the case law discussed above. IFTA Rule 11, set forth above, provides that the arbitrator "may," not "must" or "shall," declare a default. Rule 11 further provides that no award can be final until the prevailing party establishes a prima facie case.[6]

Plaintiff asserts defendants "abandoned" the first arbitration without explaining why they were abandoning it. Not so. As set forth above, in an October 21, 2010 communication to plaintiff, referenced in the complaint, IFTA explained it was "unable to continue to administer the arbitration (including soliciting arbitrators) in a neutral manner as a result of your [plaintiff's] continuing threats of litigation and hostility against IFTA, the IFTA Arbitral Agent and each IFTA Arbitrator assigned to the arbitration." This is not a case in which defendants refused to render an award and withdrew for no apparent reason. Defendants stated they were making the decision to withdraw because they believed their neutrality had been compromised by plaintiff's threats to sue them. Defendants' decision to withdraw based on their perceptions of plaintiff's conduct is a function integrally related to the arbitral process.

Plaintiff likens this case to a hypothetical question the Seventh Circuit Court of Appeals posed in *Caudle v. American Arbitration Ass'n.* (7th Cir. 2000) 230 F.3d 920. The appellate court in that case concluded there was no federal court jurisdiction over plaintiff's lawsuit against AAA. (*Id*. at pp. 922-923.) Before resolving the appeal on that ground, however, the court posed the following question and tentative answer: "Suppose

_____

[6] Defendants requested the trial court take judicial notice of IFTA's Rules for International Arbitration, dated June 1, 2009, in defendants' unopposed request for judicial notice in support of the demurrer. The trial court did not rule on defendants' request for judicial notice. When we sent the letter to the parties informing them we intended to take judicial notice of the October 21, 2010 letter, we also informed them we intended to take judicial notice of IFTA's Rules. IFTA's letter brief in response to our letter included reasons that judicial notice of its rules is proper. As stated above, plaintiff did not submit a letter brief. On the court's own motion, we take judicial notice of IFTA's Rules.

Caudle had paid the full $9,200 the AAA specified, and the Association had pocketed the money without arbitrating the dispute; it is unlikely that the AAA could claim 'immunity' in response to a demand for a refund (or an order to furnish the arbitration service for which it had been paid)." (*Id*. at p. 922.)

Here, the allegations of the complaint demonstrate defendants made efforts to administer the arbitration. The arbitrators worked to get a response filed to plaintiff's arbitration claim. They contacted Liberation and CMBG to find out who would be responding to the claim. On October 21, 2010, the third arbitrator scheduled a conference call with the parties before IFTA withdrew as the arbitral agent. Plaintiff did not want defendants to afford Liberation additional time to respond to the claim. Plaintiff repeatedly demanded the arbitrators take Liberation's default, although plaintiff has cited no authority demonstrating defendants were *required* to take Liberation's default. As discussed above, defendants withdrew from the arbitration after they determined their neutrality had been compromised by plaintiff's threats of litigation. When the Los Angeles Superior Court issued an order compelling arbitration, defendants opened the second arbitration and the proceeding moved forward.[7]

This action is barred by arbitral immunity. All of plaintiff's causes of action, including the causes of action seeking return of arbitration fees, are based on defendants' decision to withdraw from the first arbitration. Defendants are immune from liability for that decision. Plaintiff has not argued it can amend the complaint to assert additional facts or causes of action. We find the defect cannot be cured by amendment. The trial court did not err in sustaining defendants' demurrer without leave to amend.

---

[7] As discussed above, IFTA apprised plaintiff of its Rules when it opened the second arbitration and emphasized Rule 15 regarding waiver of claims against IFTA and its employees and officers—the same as it did when it opened the first arbitration. In its agreement with Liberation, plaintiff agreed the parties would resolve disputes before IFTA in accordance with IFTA's Rules.

12

## DISPOSITION

The judgment is affirmed.  Respondents are entitled to recover costs on appeal.

NOT TO BE PUBLISHED.


                                                    CHANEY, J.

We concur:


MALLANO, P. J.


ROTHSCHILD, J.