Filed 11/29/22  Laserson v. ADR Services CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| DIANA G. LASERSON et al., | B316192 |
| Plaintiffs and Appellants, | |
| v. | (Los Angeles County Super. Ct. No.20STCP04091) |
| ADR SERVICES, INC. et al., | |
| Defendants and Respondents. | |

APPEAL from an order of the Superior Court of Los Angeles County, James C. Chalfant, Judge.  Affirmed.

Law Offices of Lloyd S. Pantell and Lloyd S. Pantell; Michael Mendelson for Plaintiffs and Appellants.

Fitzgerald Kreditor Bolduc Risbrough, Eoin L. Kreditor, David M. Lawrence for Respondents Ronald Corvino and Summit View Luxe.

Freeman Mathis & Gary, Stephen M. Caine, Frances M. O'Meara for Defendant and Respondent ADR Services.

Clyde & Co US, Douglas J. Collodel; Charlston, Revich, Harris & Hoffman, Timothy J. Harris for Respondent Michael Diliberto.

---

## INTRODUCTION

This case stems from the most recent litigation between homeowners Diana and Bruce Laserson[1] and developer Ronald L. Corvino and his company, Summit View Luxe, LLC (collectively, Corvino).  Corvino has an easement on the Lasersons' property allowing him to access his adjacent property, where he is building a residence.  Pursuant to a settlement agreement from a previous litigation, the case was sent to arbitration at ADR Services, Inc. before arbitrator Michael Diliberto.  In the arbitration, the Lasersons sought an order for interim relief relating to vegetation planted in the easement.  Diliberto denied the Lasersons' motion for interim relief, but invited the parties to present additional evidence on the issue at the arbitration hearing, scheduled for three weeks later.

The Lasersons then sought to have Diliberto disqualified from the arbitration, asserting that he improperly relied on evidence outside the record in deciding the motion for interim relief.  Diliberto and ADR denied the Lasersons' requests to disqualify Diliberto.  The Lasersons filed a petition for writ of mandate in the superior court, seeking to compel Diliberto's disqualification.  The court denied the petition, finding the Lasersons have an adequate remedy at law under Code of Civil

---

[1]     The petitioners and appellants are Diana G. Laserson and Bruce Laserson, as individuals and trustees for the Laserson Family Trust dated February 22, 1994.  We refer to them collectively  as "the Lasersons."

Procedure section 1286.2, subdivision (a)(6),[2] which states that the arbitration award shall be vacated if an arbitrator is required to disqualify himself or herself and refuses to do so.

The Lasersons appealed. We agree with the superior court that the Lasersons have an adequate remedy at law, and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Previous litigation and settlement agreement

This case is the latest in a longstanding dispute between homeowners the Lasersons and Corvino, the landowner and developer of a property adjacent to the Lasersons'. Corvino holds an easement on the Lasersons' land for roadway and utility purposes. In October 2017 the parties reached a settlement agreement in their second round of litigation, portions of which addressed vegetation that could be planted and maintained in the easement area. The settlement agreement stated in relevant part that "Italian Cypress trees and or podocarpus shrub/hedge shall be planted in the bottom half of . . . the Planter Area" of the easement. In another section, the settlement agreement stated, "Corvino can plant podocarpus hedge/shrub (not podocarpus trees) in the Planter Area subject to height limitations." The Lasersons later tried to invalidate the settlement agreement, but the superior court found it to be valid and enforceable.

### B. Current litigation

#### 1. *Complaint and motion to compel arbitration*

The Lasersons sued Corvino and others in May 2019. In their first amended complaint (the only version of the complaint in the record on appeal), the Lasersons alleged nine causes of action including financial elder abuse, breach of the implied

---

[2] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

3

covenant of good faith and fair dealing, trespass, conversion, and private nuisance. They alleged that Corvino, in grading the roadway easement and installing utility access, completed work without appropriate permits. They sought damages, termination of the easement, declaratory relief, and other remedies.

Corvino moved to compel arbitration and the court granted the motion, finding the Lasersons' claims subject to the arbitration clause in the settlement agreement. Diliberto was selected as the arbitrator.

2.    *The Lasersons' motion for interim relief*

The Lasersons filed a motion for interim relief pursuant to ADR rule 23, which allows an arbitrator to "take whatever interim measures he or she deems necessary, including injunctive relief and measures for the protection or conservation of property and disposition of perishable goods." They sought an order compelling Corvino to remove certain podocarpus that had been planted in the easement. The Lasersons alleged Corvino's "actions in planting podocarpus trees on the Lasersons' property and along the upper retaining wall at the edge of the boundaries of the roadway easement violat[ed] L.A. [County] Code § 22.126.040(B)[3] thereby mandating issuance of a 'tear down' order to preserve the health and safety of the public." They acknowledged the settlement agreement allowed Corvino to plant

---

[3]    Although the Lasersons cited the Los Angeles Municipal Code (LAMC) throughout much of the case, after filing their opening brief in this court, the Lasersons filed a notice of errata clarifying that the statutes they rely upon actually are in the Los Angeles County Code (LACC). As noted below, Diliberto found that the codes and regulations of the City of Los Angeles, rather than the county, apply to the property. The Lasersons do not address this ruling or explain how the LACC is applicable here.

4

podocarpus, but alleged Corvino "surrounded the [Lasersons'] home with in excess [of] 50 podocarpus trees, some as close as five (5) feet" from the home. They alleged that because the area was in a "very high fire hazard severity zone," the podocarpus should not be there due to "the highly flammable nature of podocarpus trees and their proximity to the Lasersons' home." The Lasersons further asserted Corvino failed to obtain approval for the planting plan from the Los Angeles Department of Building and Safety or other government agencies.

Corvino apparently opposed the motion; the opposition is not included in the record on appeal. Diliberto issued a proposed order denying the motion without prejudice and asking the parties for additional information. Diliberto noted that Corvino's expert stated that the LACC was not applicable in the area, which was regulated by the City of Los Angeles rather than Los Angeles County. Diliberto agreed with Corvino that city codes and regulations applied, and therefore the Lasersons failed to meet their burden to prove a tear-down order was warranted. Diliberto noted some additional questions not addressed by the parties' briefing, such as whether the planting plan complied with applicable city codes, and invited the parties to submit additional briefing.

In their additional brief, the Lasersons asserted that both city and county regulations applied, and the podocarpus violated both sets of regulations. In his additional brief, Corvino asserted the various "defensible space" restrictions did not restrict "single specimens of trees or other vegetation that are well-pruned and maintained so as to effectively manage fuels." (Gov. Code, § 51182.) Corvino asserted that under this state statute and similar city codes, the podocarpus complied with all regulations

5

because they were irrigated and well maintained.  Diliberto visited the property to view the easement and plantings.

Diliberto asked the parties to address whether the podocarpus constituted trees or shrubs, noting that the settlement agreement allowed "podocarpus hedge/shrub (not podocarpus trees) in the Planter Area."  Corvino submitted an additional brief, as well as expert declarations regarding the characteristics and flammability of podocarpus.  One expert, Carl Mellinger, opined that the grouping of podocarpus at issue created a privacy hedge, because the plants were close together and their foliage near the ground was retained. Mellinger contrasted "tree" podocarpus, which are single specimens, not touching other trees, with the lower foliage removed.

The Lasersons submitted the written opinion of their expert, Ruben Green, which stated, "Trees and shrubs are interchangeable words used to describe a plant based on its usage in the landscape."  Green stated that podocarpus is more commonly sold as a tree, and is "not commonly sold as a shrub in a nursery."  He provided links to eight websites, including nurseries, "treesusa.org," and "conifersociety.org" in support of his opinion.  Green opined that the podocarpus plants near the Lasersons' home "are a fire hazard."

On October 3, 2020, Diliberto issued a written order denying the Lasersons' request for interim relief with prejudice. He reiterated his conclusion that city regulations applied, and noted that city fire clearance requirements required leafy foliage to be removed from the lower third of *trees*, but this requirement "does not apply to . . . privacy hedges, and ornamental shrubbery . . . provided they are well maintained and free of all dead and dry material."

6

Diliberto discussed the opinion of Lasersons' expert, Green, that podocarpus are usually sold as trees, including discussing the websites linked in Green's report. Diliberto noted that Corvino's expert and some of Green's sources stated that podocarpus could be grown as a privacy hedge. He also stated, "The arbitrator's research located a company named PlantClearance.com," which listed podocarpus as a "hedge plant." He continued, "Podocarpus Gracilior is listed on that webpage among other types of hedge plants, as shown in the screenshots captured from their website," which Diliberto attached to the order.

Diliberto then stated, "Based on the totality of the evidence, the arbitrator finds that the Podocarpus Gracilior in the Planter Area is a species of tree that could be grown as a tree, or trained into a hedge. The parties apparently recognized these distinct options in the 2017 Settlement Agreement . . . by agreeing that" Corvino could plant "podocarpus hedge/shrub (not podocarpus trees) in the Planter Area." He continued, "The arbitrator interprets that paragraph to mean that [Corvino] must maintain the Podocarpus Gracilior in the Planter Area as hedges, but not as trees (with branches and foliage removed from the bottom and a large mass of branches and leaves remaining at the top . . . )." Diliberto noted that Corvino had not removed the lower foliage from the podocarpus at issue, and therefore Corvino was "using the Podocarpus Gracilior as a privacy hedge which will presumably remain a hedge with proper maintenance."

Diliberto noted that Corvino's hedge was not as neatly kept as the one pictured on PlantClearance.com, and asked that additional evidence be presented at the upcoming arbitration hearing about whether the hedge could be maintained with a

neater appearance.  Diliberto also asked for the parties to submit evidence at the arbitration hearing about what was intended regarding "height limitations" in the planter area in the settlement agreement.  In addition, Diliberto asked for additional information about compliance with fire clearance regulations and the results of a recent fire department brush inspection on the property.  He then stated, "Based on the totality of the circumstances, [the Lasersons'] motion for interim relief is denied, with prejudice.  The parties may present further arguments and evidence relevant to these issues at the arbitration hearing."

3. *The Lasersons' challenges to Diliberto*

On October 6, 2020, three days after Diliberto issued the order denying the Lasersons' motion for interim relief, the Lasersons' counsel sent Diliberto a letter stating, "The later-arising issue of a so-called 'privacy hedge' was <u>not</u> raised by the parties until after the primary documents were filed. The arbitrator resolved the issue by using 'Google,' notwithstanding his instructions to [the Lasersons] to hire an arborist. [The Lasersons] complied; however, 'Google' prevailed."  The letter stated that Diliberto's reliance on online research after initial briefing was filed was "indefensible," unlawful, in excess of the arbitrator's powers, and violated the Lasersons' right to a fair hearing.  The Lasersons asserted that in light of these breaches, Diliberto should disqualify himself from the arbitration.

Diliberto responded that he was "willing to re-open the hearing . . . in order to allow both parties to submit supplemental briefs and/or make oral arguments" regarding the issue, and reminded the parties that although the order "denied the emergency interim relief requested," it preserved all issues to

8

be addressed in the October 27 arbitration hearing. There is no direct response to Diliberto's communication in the record on appeal, but in a later filing Diliberto stated that the Lasersons rejected his offer to reopen the hearing on the motion for interim relief.

The Lasersons filed a motion with ADR to remove Diliberto from the arbitration. They argued that under sections 170.1 and 1281.91, subdivision (d), an arbitrator must be removed if he or she has personal knowledge of disputed evidentiary facts. The Lasersons asserted that Diliberto's "independent investigation herein violates fundamental notions of due process" and denied the Lasersons "a right to an impartial hearing and an award not corrupted by bias." They requested that the arbitration hearing, scheduled for five days in October and November 2020, be vacated.

In a responding letter, Corvino argued that the Lasersons failed to "raise a single cognizable basis on which to demand the Arbitrator's recusal," and accused them of engaging in a "bad faith attempt . . . to avoid a final adjudication." Corvino argued that at most, Diliberto considered inadmissible evidence, which did not suggest any bias for or against any party.

Diliberto issued an order on October 16, 2020 noting that under ADR rule 12, "[u]pon objection of a party to the continued service of a neutral arbitrator," ADR or the arbitrator shall refer the issue to the court for determination, "which shall be conclusive." Diliberto stayed the arbitration, vacated the upcoming hearing dates, and directed the Lasersons to petition the court for an order determining whether the matter should proceed before Diliberto or whether a new arbitrator should be appointed.

9

The Lasersons filed a petition for writ of mandate directly in the Supreme Court, asserting that Diliberto relied on ADR rule 12 to "evade his clear statutory duty" under section 1281.91, subdivision (d).[4]  The Supreme Court transferred the case to this District, which denied the petition for failure to establish entitlement to extraordinary relief.  On December 9, 2020, the Supreme Court denied the Lasersons' petition for review of this court's order.

    4.    *The Lasersons' writ petition*

On December 11, 2020, the Lasersons filed a petition for writ of mandate in the Los Angeles Superior Court against ADR as the respondent, and Diliberto as real party in interest.[5]  The Lasersons sought Diliberto's "immediate disqualification as arbitrator" under section 1281.91.  They asserted Diliberto relied on his "independent fact finding" as the basis for his denial of the Lasersons' motion for interim relief in violation of ethics codes for arbitrators and judges, the California Rules of Court, and section 1281.85, which addresses ethical standards for arbitrators.  They alleged Diliberto's "violation required [him] to disqualify himself pursuant to" sections 170.1, subdivision (a)(1) and 1281.91, subdivision (d).  The Lasersons further alleged that in response to their objections, ADR "refused to act" on their motion, and Diliberto refused to disqualify himself from the arbitration.  The Lasersons asked the superior court to stay the arbitration, issue

---

[4]    On our own motion, we take judicial notice of the record in *Laserson et al. v. ADR Services, Inc.*, B308672, which includes the petition for writ of mandate the Lasersons filed in the Supreme Court under case number S265394.

[5]    The superior court later ordered the Lasersons to name Diliberto as respondent, and ADR as the real party in interest.

a writ of mandate under section 1085 compelling Diliberto to disqualify himself from the arbitration, order ADR to select a new arbitrator, and find ADR rule 12 to be in conflict with California law.

Corvino successfully moved to file a complaint in intervention. The court set a briefing schedule and a hearing date.

In their opening brief, the Lasersons repeated their contentions that Diliberto's "self-obtained facts provided him with personal knowledge of disputed evidentiary facts" and that such "actions required . . . Diliberto's disqualification." They noted that section 1281.91, subdivision (d) states, "If any ground specified in Section 170.1 exists, a neutral arbitrator shall disqualify himself or herself upon the demand of any party made before the conclusion of the arbitration proceeding." Section 170.1, subdivision (a)(1) requires a judge to be disqualified if he or she has "personal knowledge of disputed evidentiary facts" such that he or she is "likely to be a material witness in the proceeding." The Lasersons asserted that these statutes were also applicable under ADR rule 11(E), which allows a party to challenge the continued service of an arbitrator "on any of the 'judicial-type' grounds listed in Code of Civil Procedure Section 170.1." The Lasersons contended that Diliberto's disqualification should have been automatic, and Diliberto's and ADR's refusal to disqualify Diliberto from the arbitration conflicted with relevant California law, undermined public confidence in the arbitration process, and violated the Lasersons' due process rights.

Diliberto filed an opposing brief stating that "the sole basis for [the Lasersons'] disqualification claim is the Arbitrator's research that located a website, which provided nothing more

11

than corroboration of the parties' respective contentions." He asserted that his research was a valid exercise of an arbitrator's authority to understand and address the parties' dispute. Diliberto stated that he did not deem the website to be evidence, and whether the plants constituted trees or shrubs was not a "disputed evidentiary fact" as defined in section 170.1—the parties, their experts, and the settlement agreement all acknowledged that podocarpus could be deemed either a tree or a shrub depending on its usage.

Diliberto also asserted that the Lasersons' due process rights were not abridged, because they had the opportunity to fully address all issues at the arbitration hearing. In addition, Diliberto argued the Lasersons had an adequate remedy at law because they could move to vacate the arbitration award after the arbitration was complete. In his declaration, Diliberto stated that he had denied the Lasersons' request for interim relief, but "I have not decided the final merits of the dispute between the parties in the matter before me, or formed any views as to which party is right or wrong about the 50 podocarpus plants, or the application of the 2017 settlement agreement between the parties."

ADR's opposing brief stated that it took no position on the merits of the Lasersons' claim that Diliberto should disqualify himself. ADR stated that it provides only administrative support services, it is not involved in the contractual relationship between parties and neutrals, and it has no authority to "order" Diliberto to disqualify himself, as the Lasersons contended. ADR also stated that the procedures in the action complied fully with ADR rules, and parties to an arbitration do not have a right to unilaterally disqualify an arbitrator.

12

In his opposing brief, Corvino pointed out that the Lasersons were challenging only an interim ruling, Diliberto had offered to reopen the hearing but the Lasersons refused, and the actual arbitration was scheduled to be held just weeks after the interim ruling. Corvino asserted that the Lasersons had "used this event to derail the arbitration" for more than eight months so far, when in fact there was no basis for disqualification. Corvino argued that no authority supported the Lasersons' contention that Diliberto should have been automatically disqualified.

In a short reply brief, the Lasersons asserted that they demonstrated "an uncontested violation of section 170.1."

The superior court denied the Lasersons' petition in a 21-page written ruling.[6] It noted that a petition for writ of mandate may be granted only where there is no adequate remedy in the ordinary course of law. (§ 1286.) The court questioned whether there was a legal basis to address an interim ruling by an arbitrator, stating, "[N]othing in the CAA's [California Arbitration Act's] statutory scheme permits a party to seek judicial review of disqualification before the arbitration is completed." It noted that "judicial review of private arbitration awards is generally limited to statutory grounds for vacating or correcting the award." The court stated that "disqualification rules are not self-executing where an arbitrator refuses to disqualify himself and judicial review of private arbitration awards is generally limited to the statutory grounds for vacating or correcting the award. [Citation.] Thus, a party who believes that the arbitrator wrongly refused to disqualify himself must

_____

[6]     There is no reporter's transcript of the writ petition hearing.

13

wait until the arbitration ends and seek to vacate or correct the unfavorable arbitration award under section 1285." The court also stated, "There is no reason to believe that section 170.1 issues may be judicially reviewed before an arbitration ends. Because there was no statutory basis for the remedy the Lasersons sought and there was an adequate remedy at law, the court held that "[t]he petition must be denied on this ground."

The court then considered the merits of the Lasersons' arguments arguendo, and stated that "[t]he Arbitrator's review of the PlantClearance.com website did not violate section 170.1, Standard 5[7], or arbitral fairness." The court noted that in an arbitration, "rules of evidence and rules of judicial procedure need not be observed." (§ 1282.2, subd. (d).) In addition, the Lasersons "received more than sufficiently fair procedure," through their briefing, their submission of expert opinions, and the ability to present further evidence at the arbitration hearing. The court further noted that section 1282.2, subdivision (g) states, "If a neutral arbitrator intends to base an award upon information not obtained at the hearing, he shall disclose the information to all parties to the arbitration and give the parties an opportunity to meet it." The court observed, "There would be no reason for this provision if the arbitrator could not independently investigate the facts of a dispute." Moreover, California Rules of Court, Ethics Standards for Neutral

---

[7] California Rules of Court, Ethics Standards for Neutral Arbitrators in Contractual Arbitration, Standard 5 states, "An arbitrator must act in a manner that upholds the integrity and fairness of the arbitration process. He or she must maintain impartiality toward all participants in the arbitration at all times."

14

Arbitrators in Contractual Arbitration, Standard 14(c) states, "An arbitrator may obtain the advice of a disinterested expert on the subject matter of the arbitration if the arbitrator notifies the parties of the person consulted and the substance of the advice and affords the parties a reasonable opportunity to respond." The court concluded, "There is simply no statutory, ethical, contractual, or fairness prohibition against an arbitrator conducting his own research regarding an issue that he is being asked to determine, provided the parties are given an opportunity to respond. [The Lasersons] received that opportunity from the Arbitrator."

The court further stated that Diliberto did not obtain personal knowledge of a disputed evidentiary fact. The "classification of a Podocarpus depends on its use as a hedge, tree, or shrub, a fact which is not disputed by the parties as reflected in their distinctions in the Settlement Agreement. Nor is the Arbitrator likely to be a material witness." The court also noted that the PlantClearance.com information was consistent with the information submitted by the Lasersons' expert. The court therefore denied the petition and ordered Corvino to prepare a judgment.

In a footnote, the court held that ADR had no obligation regarding disqualification. The court noted that ADR was not a party to the settlement agreement, and "has no ability to order the Arbitrator to recuse himself."

Judgment was entered on September 30, 2021. The Lasersons timely appealed.

## DISCUSSION

The Lasersons contend the superior court erred by denying their writ petition. We find no error.

## A.     Forfeited arguments

We begin by defining the scope of the appeal.  Much of the Lasersons' briefing on appeal focuses on arguments not asserted in the trial court.  The Lasersons argue Diliberto and the superior court erred in that they "neither addressed nor ruled on [the Lasersons'] primary and sole issue – the life-threatening condition the 'podocarpus' vegetation posed" to the Lasersons' home and the public in general.  Their opening and reply briefs focus primarily on the contention that Diliberto and the court failed to address this "primary" basis of the Lasersons' motion.  The Lasersons rely on Government Code section 51175, which asserts the general legislative position that wildfires pose a serious threat to health and safety, and Civil Code section 3513, which states in part that "a law established for a public reason cannot be contravened by a private agreement."  The Lasersons also cite heavily to Los Angeles County Code sections (sometimes incorrectly cited as municipal codes), but they do not address the jurisdictional question of which codes apply.  They argue that Diliberto's "failure to decide [the Lasersons'] primary issue – extreme danger of podocarpus to [the Lasersons] and the community is inexplicable."

Corvino and Diliberto correctly point out that the Lasersons did not make this contention below.  In reply, the Lasersons assert they did not waive the "public right" of the "protection of the citizenry in 'very high fire severity areas.'"  They also argue that "[t]he general rule against so called 'new issues' is not applicable to Appellate courts where the issues were not available to be raised in the lower court," but they do not explain how they were prevented from making this contention in the superior court.  The Lasersons also contend that we have

16

discretion to consider the issue for the first time on appeal because it is a matter of public interest.

"The failure to raise an issue in the trial court in a writ proceeding waives the issue on appeal." (*Fox v. State Personnel Bd.* (1996) 49 Cal.App.4th 1034, 1039.) Below, the Lasersons did not assert that Diliberto erred by failing to decide certain issues in the motion, nor did they ask the court to decide those issues. Thus, to the extent the Lasersons' appellate arguments rely on such contentions, these arguments have been forfeited and we do not consider them. We are also unpersuaded by the Lasersons' attempts to cast this neighbor dispute as a matter of public interest, and to sidestep the arbitration agreement by asking the court to decide disputed issues between the parties.

Moreover, the Lasersons' argument is not supported by the record. Diliberto *did* decide the issue when he determined the Lasersons were not entitled to the interim relief they requested. Diliberto articulated that he was denying the Lasersons' motion in part because city and state fire clearance requirements do not require the removal of privacy hedges or ornamental shrubbery if the plants are well maintained and free of dry material. Finding that the podocarpus were planted and maintained as a privacy hedge, Diliberto denied the Lasersons' motion. This case therefore is unlike *Morgan Phillips, Inc. v. JAMS/Endispute, L.L.C.* (2006) 140 Cal.App.4th 795, cited by the Lasersons, in which this court held that arbitral immunity does not apply where the arbitrator, after holding the arbitration hearing, withdrew from the arbitration and failed to issue an arbitration award.

Here, Diliberto ruled on the motion, and the Lasersons' new argument on appeal boils down to a disagreement with

17

Diliberto's decision. They contend their cited authorities and expert opinions should have been given greater weight, or that Diliberto should have interpreted certain regulations differently. Disagreement with a result, however, is not a showing of error.

In addition, ADR correctly points out that the Lasersons have not attempted to challenge the superior court's basis for finding in ADR's favor: that ADR was not a party to the settlement agreement and was not obligated to compel Diliberto to recuse himself. Any contention that the superior court's ruling was incorrect on this basis also has been forfeited. We therefore turn to the Lasersons' remaining arguments.

## B. Standard of review

Where a petitioner challenges the respondent's alleged failure to comply with the law, "review is limited to that of traditional writ of mandate." (*Unnamed Physician v. Board of Trustees of Saint Agnes Medical Center* (2001) 93 Cal.App.4th 607, 618 (*Unnamed Physician*).) A traditional writ of mandate will issue to "compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station" (§ 1085), if "there is not a plain, speedy, and adequate remedy, in the ordinary course of law" (§ 1086). "There are two requirements essential to issuance of a writ of mandate under Code of Civil Procedure section 1085: (1) the respondent has a clear, present, and usually ministerial duty to act; and (2) the petitioner has a clear, present, and beneficial right to performance of that duty." (*Unnamed Physician, supra*, 93 Cal.App.4th at p. 618; accord, *California Advocates for Nursing Home Reform v. Smith* (2019) 38 Cal.App.5th 838, 905.) "Mandate will not issue if the duty is . . . mixed with

18

discretionary power.'" (*Coast Community College Dist. v. Com. on State Mandates* (2022) 13 Cal.5th 800, 815.)

"Whether there is a 'plain, speedy and adequate remedy, in the ordinary course of law' within the meaning of the statute usually is regarded as a question of fact that requires an evaluation of the circumstances of each particular case." (*Villery v. Department of Corrections & Rehabilitation* (2016) 246 Cal.App.4th 407, 414.) Whether a particular remedy is "plain, speedy, and adequate" is typically a question of fact left to the sound discretion of the trial court, and whether a potential alternate remedy is available "in the ordinary course of law" is a legal issue subject to independent review on appeal. (*Id.* at p. 415.)

## C. The Lasersons have a plain, speedy, and adequate remedy at law

The existence of a remedy at law is clear. The California Arbitration Act, § 1280, et. seq., addresses both the grounds for disqualification of an arbitrator and the remedy if the arbitrator improperly fails to disqualify himself or herself. Section 1281.91, subdivision (d) states in part, "If any ground specified in Section 170.1 exists, a neutral arbitrator shall disqualify himself or herself upon the demand of any party made before the conclusion of the arbitration proceeding." If the arbitrator "was subject to disqualification upon grounds specified in Section 1281.91 but failed upon receipt of timely demand to disqualify himself or herself as required by that provision," the superior court must vacate the arbitration award. (Section 1286.2, subd. (a)(6); see also *Haworth v. Superior Court* (2010) 50 Cal.4th 372, 381 (*Haworth*).)

19

The Lasersons assert the trial court erred in finding that a motion to vacate the arbitration award constitutes a "speedy" remedy. They argue the court's ruling was improperly "based upon a non-existent rule of 'deferral' until arbitration terminates," because "there is no rule of law requiring the citizenry to wait until the arbitration ends" before seeking an arbitrator's disqualification. They contend that by requiring the parties to wait to address the issue in a motion to vacate the eventual arbitration award, the court ignored section 1281.91, subdivision (d), which states that an arbitrator "shall disqualify himself or herself *upon the demand of any party. . . .*" (Emphasis added.) The Lasersons assert they are entitled to a "present time" remedy rather than a future remedy.

However, "'[a] remedy is not inadequate merely because more time would be consumed by pursuing it through the ordinary course of law.'" (*Baeza v. Superior Court* (2011) 201 Cal.App.4th 1214, 1221.) Moreover, the parties cite no cases (and we have found none) suggesting that a party to an arbitration is entitled to court review of an arbitrator's interlocutory decision regarding disqualification. To the contrary, cases discussing a somewhat analogous circumstance—arbitrators who fail to make required disclosures—demonstrate that the appropriate remedy is to vacate the arbitration award. (See, e.g., *Haworth, supra,* 50 Cal.4th at p. 383 ["In the event Ossakow establishes that Judge Gordon failed to make a required disclosure, she is entitled to vacation of the arbitration award"]; *Grabowski v. Kaiser Foundation Health Plan, Inc.* (2021) 64 Cal.App.5th 67, 80 ["The arbitrator did not make the required disclosure. [Section 1286.2, subdivision (a)(6)(A)] therefore requires that the arbitration award be vacated, without any further showing"]; *Roussos v.*

*Roussos* (2021) 60 Cal.App.5th 962, 974 ["despite Ted's notice of disqualification, the arbitrator refused to disqualify himself. The trial court was therefore required to vacate the award under section 1286.2, subdivision (a)(6)(B)"]; *Honeycutt v. JPMorgan Chase Bank, N.A.* (2018) 25 Cal.App.5th 909, 930 ["under section 1286.2, the arbitrator's failure to disclose the four arbitrations with counsel for Chase was a failure 'to disclose within the time required for disclosure a ground for disqualification of which the arbitrator was then aware,' which requires vacatur of the award"]; *Azteca Construction, Inc. v. ADR Consulting, Inc.* (2004) 121 Cal.App.4th 1156, 1169 ["Since . . . Taylor's pre-arbitration disqualification was mandatory, the award to ADR Consulting must be vacated"].)[8]

Moreover, judicial review of arbitration proceedings is circumscribed. "Limited judicial review is a well-understood feature of private arbitration, inherent in the nature of the arbitral forum as an informal, expeditious, and efficient alternative means of dispute resolution." (*Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, 831; see also *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 10 ["judicial intervention in the arbitration process [should] be minimized"].) For example, "[t]he issuance of an 'award' is what passes the torch of jurisdiction from the arbitrator to the trial court. [¶] By negative implication, a ruling that is not an 'award' is [not] subject to confirmation, correction or vacation by a trial court." (*Lonky v. Patel* (2020) 51 Cal.App.5th 831, 843-844.) And courts generally may only

---

[8] In *Advantage Medical Services, LLC v. Hoffman* (2008) 160 Cal.App.4th 806, the court vacated an *interim* arbitration award, but the Court of Appeal did not discuss the lack of finality of the award.

consider petitions to confirm or vacate *final* arbitration awards because "[w]ithout [a finality] requirement, a wide variety of orders vacating (or dismissing petitions to vacate) interim arbitration awards would be appealable, which would interfere with the "'efficient, streamlined procedure[ ]'" that is supposed to be arbitration's 'fundamental attribute.'" (*Judge v. Nijjar Realty, Inc.* (2014) 232 Cal.App.4th 619, 634; see also *Kaiser Foundation Health Plan, Inc. v. Superior Court* (2017) 13 Cal.App.5th 1125, 1150 ["because the partial final award is not an award, the trial court lacked jurisdiction to confirm it"]; *Maplebear, Inc. v. Busick* (2018) 26 Cal.App.5th 394, 407 ["parties to an arbitration agreement cannot confer jurisdiction on courts to review [an] arbitrator's rulings by agreeing to proceed under a private organization's rules that purport to allow immediate review of some interim awards"].) The Lasersons cite no authority to the contrary.

In sum, the superior court did not err in finding that the Lasersons had an adequate, speedy remedy at law, and the Lasersons have not demonstrated entitlement to any other remedy. "A writ of mandate must not be issued where the petitioner's rights are otherwise adequately protected." (*Agosto v. Board of Trustees of Grossmont-Cuyamaca Community College Dist.* (2010) 189 Cal.App.4th 330, 336.) Here, the Lasersons' rights are adequately protected by the procedures in section 1286.2, subdivision (a)(6), requiring the court to vacate the arbitration award if it finds Diliberto violated section 1281.91, subdivision (d).

22

**D.     The Lasersons have not demonstrated a right to relief**

Even if we were to consider the merits of the Lasersons' contentions arguendo, they have not demonstrated a basis for writ relief. Diliberto's alleged misconduct—citing independent research in support of an interim ruling—does not require disqualification.

The Lasersons assert that Diliberto must be disqualified under sections 1281.91, subdivision (d) and 170.1, subdivision (a)(1). Section 1281.91, subdivision (d) provides that an arbitrator should be disqualified when "any ground specified in Section 170.1 exists." Section 170.1, subdivision (a)(1)(A) states that a judge "shall be disqualified" if he or she "has personal knowledge of disputed evidentiary facts concerning the proceeding." Section 170.1, subdivision (a)(1)(B) describes "personal knowledge" as a circumstance in which the judge is "likely to be a material witness in the proceeding." "'[D]isqualification based on a disclosure is an absolute right only when the disclosure is legally required.'" (*Roussos v. Roussos, supra*, 60 Cal.App.5th at p. 971.)

Diliberto's actions did not meet these definitions. He stated in his ruling on the Lasersons' motion that a website called PlantClearance.com included podocarpus as a "hedge plant," and showed photos of podocarpus maintained neatly as hedges. The basis for Diliberto being disqualified, according to the writ petition, was this "use of evidence outside the [arbitration] proceedings."

First, that podocarpus could be used as a tree or a shrub/hedge plant was not a "disputed evidentiary fact." The parties' 2017 settlement agreement referenced podocarpus as

23

either trees or a "shrub/hedge." The Lasersons' expert, Ruben Green, stated in his written report that "[t]rees and shrubs are interchangeable words used to describe a plant based on its usage in the landscape." Corvino's expert, Carl Mellinger, opined that the grouping of podocarpus at issue created a privacy hedge, and the plants were not maintained as trees. Thus, the fact that podocarpus could be characterized as either a tree or a shrub/hedge was not "a disputed evidentiary fact" under section 170.1, subdivision (a)(1)(A).

Second, Diliberto was not "likely to be a material witness in the proceeding" under section 170.1, subdivision (a)(1)(B). Discussing this standard in *People v. Williams* (1997) 16 Cal.4th 635, 653, the Supreme Court stated, "A material witness is one 'who can give testimony . . . no one else, or at least very few, can give.' [Citation.] Testimony is material only if it is 'important,' 'more or less necessary,' 'going to the merits' [citation], or if it has some likelihood of affecting the outcome of the case." Here, Diliberto was not likely to be a material witness; the information he found online largely echoed what the parties and their experts had already agreed upon.

Third, an arbitrator's reliance on evidence outside the record of arbitration is not strictly prohibited. To the contrary, the CAA states, "If a neutral arbitrator intends to base an award upon information not obtained at the hearing, he shall disclose the information to all parties to the arbitration and give the parties an opportunity to meet it." (§ 1282.2, subd. (g).) In addition, in an arbitration the "rules of evidence and rules of judicial procedure need not be observed." (§ 1282.2, subd. (d).) As our Supreme Court has recognized, "[A]n arbitrator has the power to decide the submitted matter on any legal or factual

24

basis, whether or not any party has relied upon that particular basis." (*Moshonov v. Walsh* (2000) 22 Cal.4th 771, 777.) And as the superior court observed, California Rules of Court, Ethics Standards for Neutral Arbitrators in Contractual Arbitration, Standard 14(c) states, "An arbitrator may obtain the advice of a disinterested expert on the subject matter of the arbitration if the arbitrator notifies the parties of the person consulted and the substance of the advice and affords the parties a reasonable opportunity to respond."

Here, Diliberto informed the parties in his written order that he found information on PlantClearance.com, and asked that additional evidence be presented at the upcoming hearing. When the Lasersons objected to Diliberto's citation to PlantClearance.com, Diliberto offered to reopen the hearing to allow the parties to present additional evidence. The Lasersons declined. Before an award may be vacated on the basis that the arbitrator considered outside evidence, "it must be shown the rights of the complaining party were substantially prejudiced." (*Canadian Indem. Co. v. Ohm* (1969) 271 Cal.App.2d 703, 708; see also § 1286.2, subds. (a)(3) and (a)(5).) The Lasersons do not identify any prejudice, aside from speculation that the "citizenry" might suffer a lack of confidence in arbitration. They do not explain how public opinion about arbitration could be affected by this private neighbor dispute. Thus, Diliberto's citation to a source of information not submitted by the parties, along with his invitation to the parties to address it and the lack of any prejudice to the Lasersons, was not a basis for disqualification.

The Lasersons also cite multiple ethics rules and cases for the general proposition that arbitrators have a duty to proceed with fairness and integrity. (See, e.g., *Graham v. Scissor-Tail,*

*Inc.* (1981) 28 Cal.3d 807, 825 (discussing a contract of adhesion, and stating that although "parties shall have considerable leeway in structuring the dispute settlement arrangements by which they are bound; . . . [the court] must insist . . . that certain 'minimum levels of integrity' be achieved if the arrangement in question is to pass judicial muster"]; *Roussos v. Roussos, supra*, 60 Cal.App.5th at p. 975 [citing *Graham* regarding minimum levels of integrity in arbitration]; California Rules of Court, Ethics Standards for Neutral Arbitrators in Contractual Arbitration, Standard 5 ["An arbitrator must act in a manner that upholds the integrity and fairness of the arbitration process. He or she must maintain impartiality toward all participants in the arbitration at all times."].) None of these general standards supports the argument that Diliberto should be disqualified from the arbitration under these circumstances.

The Lasersons have not established that Diliberto was required to disqualify himself as a matter of law. Thus, they did not make the required showing for a writ of mandate under section 1085 that Diliberto or ADR had a clear and present duty to act or that the Lasersons had a clear, present, and beneficial right to performance of that duty. (*Unnamed Physician, supra*, 93 Cal.App.4th at p. 618.) In sum, the Lasersons have not demonstrated they were entitled to a writ of mandate under section 1085.[9]

---

[9]     The Lasersons assert they are entitled to attorney fees under section 1021.5 because they are enforcing an important right affecting the public interest. Because we affirm the superior court's order, we do not reach this contention.

# DISPOSITION

The order is affirmed.  Respondents are entitled to their costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


COLLINS, J.

We concur:


MANELLA, P. J.


CURREY, J.